NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 23, 2009
Decided June 23, 2009

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 08-3720

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Western District of Wisconsin. |
| v. | No. 08-CR-24-C-01 |
| DENNIS O. SAID, *Defendant-Appellant.* | Barbara B. Crabb, *Chief Judge.* |

**O R D E R**

In 2003, officials from the Office of the Comptroller of the Currency performed a routine audit of the First National Bank of Blanchardville, Wisconsin, and determined that the bank was insolvent. They closed the bank and the FBI started an investigation, which led to the bank's president, Mark Hardyman. Hardyman had approved numerous fraudulent loans and had kept those loans hidden from the bank's board of directors and from bank regulators. Dennis Said was the recipient of about $6 million of those fraudulent loans and, after the investigation, he was charged in a 39-count indictment. Said ultimately pleaded guilty to one count of bank fraud, 18 U.S.C. § 1344, and one count of money laundering, *id.* § 1957, and received a sentence of 100 months. (Hardyman, who did not

benefit from the scheme except through bonus pay, also pleaded guilty and got 108 months.)  Said filed a notice of appeal, but his appointed lawyer moves to withdraw under *Anders v. California*, 386 U.S. 738 (1967), because he cannot discern any nonfrivolous ground for appeal.  Said did not accept our invitation to respond to his lawyer's submission.  *See* CIR. R. 51(b).  Limiting our review to the potential issues identified in counsel's supporting brief, *see United States v. Cano-Rodriquez*, 552 F.3d 637, 638 (7th Cir. 2009), we grant counsel's motion and dismiss the appeal.

In his *Anders* submission, counsel addresses only potential challenges to Said's prison term.  First, he considers challenging the district court's calculation of Said's guidelines range.  Even after *United States v. Booker*, 543 U.S. 220 (2005), we will reverse if the district court made a nonharmless error in calculating the guidelines range.  *See United States v. Abbas*, 560 F.3d 660, 666-67 (7th Cir. 2009).  The court began its calculation by grouping the two offenses of conviction and using the offense level for the money laundering count because it is higher.  *See* U.S.S.G. §§ 3D1.2(d), 3D1.3(b).  That is, the court began with a base offense level of 7, *see id.* §§ 2S1.1(a)(1), 2B1.1(a)(1), to which it added 18 levels for the $3.7 million loss attributable to Said, *see id.* § 2B1.1(b)(1)(J).  Next, the court added 4 levels because the offense "substantially jeopardized the safety and soundness" of the bank, *see id.* § 2B1.1(b)(14)(B)(i), as well as another level because Said engaged in money laundering, *see id.* § 2S1.1(b)(2)(A).  Finally, the court subtracted 3 levels for acceptance of responsibility, *see id.* § 3E1.1, for an adjusted offense level of 27.  With a criminal history score of IV, Said's guidelines range was 100 to 125 months.  *See id.* ch. 5, pt. A.

Said's only objection to the calculation of his guidelines range was that he should not have gotten the four-level increase for substantially jeopardizing the safety and soundness of the bank. *See id.* § 2B1.1(b)(14)(B)(i).  (This provision was numbered 2B1.1(b)(13)(B)(i) at the time, but its substance has not changed.)  The government presented the testimony of a federal bank examiner involved in the audit who explained that Said had been allowed to borrow more than 12 times the amount that a single customer may legally borrow and that Said's defaulted loans accounted for 15% of the bad assets on the bank's books.  In the bank examiner's opinion, Said had substantially jeopardized the safety and soundness of the bank.  Said argued that he should not get the four-level increase because the safety and soundness of the bank would have been in jeopardy even if he had not been involved in the scheme and because he could not have done anything without the help of Hardyman, the bank's president.  The court sided with the government.  We review the application of the guidelines de novo, *see Abbas*, 560 F.3d at 662, but as counsel explains, there was no error.  That others also contributed to the bank's insolvency is beside the point; the bank examiner's testimony provides ample support for the district court's ruling.  *See United States v. Frith*, 461 F.3d 914, 918 (7th Cir. 2006); *United*

*States v. Young*, 413 F.3d 727, 732-33 (8th Cir. 2005).  Thus, a challenge to the court's calculation of the range would be frivolous.

Next, counsel considers arguing that the district court did not properly consider the factors listed in 18 U.S.C. § 3553(a), and as a result imposed an unreasonable sentence.  At sentencing Said asked for a below-guidelines sentence based on his age and serious health problems, but the court instead imposed the lowest possible within-guidelines sentence, 100 months.  The court explained that, in light of Said's history and characteristics, that sentence was "sufficient and no greater than necessary" to hold him accountable, protect the community, and achieve parity with the sentences imposed on the other participants in the scheme.  That was a sufficient evaluation of the § 3553(a) factors.  *See United States v. Woods*, 556 F.3d 616, 623 (7th Cir. 2009).  Moreover, because Said's prison term is within the guidelines range, we would afford it a presumption of reasonableness.  *See United States v. Sawyer*, 558 F.3d 705, 714-15 (7th Cir. 2009).  Thus, any argument about the reasonableness of Said's sentence would be frivolous.

Accordingly, counsel's motion to withdraw is **GRANTED**, and the appeal is **DISMISSED**.